IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

B. FERNANDEZ & HNOS., INC.

    Plaintiff,

    v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.

    Defendants.

**Civil No. 11-1567 (SEC)**

## OPINION AND ORDER

Before the Court are co-defendant International Brotherhood of Teamsters' motion to dismiss (Docket # 12), plaintiff's opposition (Docket # 24), and co-defendant's reply (Docket # 29). After reviewing the filings and the applicable law, co-defendant's motion is **DENIED** and plaintiff's request to amend its complaint is **GRANTED**.

**Factual and Procedural Background**

In this federal question action, plaintiff B. Fernandez & Hnos., Inc. ("BFH"), a Puerto Rican importer and distributor, brings suit against co-defendant, the International Brotherhood of Teamsters ("IBT") and the Teamsters Union of Puerto Rico, Local 901 ("Local 901"), seeking damages for the economic losses it allegedly suffered as a result of an union-led strike. BFH couches its four causes of action on (1) section 303(a) of the Labor Management Relations Act (Taft-Harley Act), 29 U.S.C. § 187(a); (2) Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31, § 5141; (3) tortious interference; and (4) breach of a collective bargaining agreement. Docket # 1.

Because the Court is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will draw BFH's well-pleaded facts from its complaint. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 529 (1st Cir. 2011) (citation omitted), supplementing them with references to

**CIVIL NO. 11-1567 (SEC)** Page 2

documents annexed to the complaint or fairly incorporated into it. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 34 (1st Cir. 2009).

For many decades, some of BFH's warehouse employees (the "Employees") have been represented by Local 901. Docket # 1, ¶ 7. The relationship between the Employees and their employer was governed by a series of collective bargaining agreements executed "from time to time." Id. On July 1, 2004, BFH and Local 901 subscribed the last collective bargaining agreement (the "CBA"), with an original date of expiration of June 30, 2009. Id., ¶ 8. Upon its expiration, the CBA provided for its automatic renewal, and its terms and conditions remained in effect. Id., ¶ 9.

As relevant here, the CBA proscribed Local 901 from "promoting, assisting or authorizing strikes, boicots or any concerted work stoppage, including 'sympathy strikes,'" that would affect BFH's day-to-day operations. Id., ¶ 10. After the June 30, 2009 expiration date, BFH and Local 901 sat down to negotiate a new collective bargaining agreement, and, to that effect, selected their respective representatives. Id., ¶ 12. But on December 17, 2010, during the course of negotiations, the Employees, "[w]ith the consent and advice of the Union officers, its Board of Directors and representatives, voted and declared and illegal strike." Id., ¶ 15.

According to the complaint, the striking Employees blocked the entrances to BFH's warehouse and headquarters. They also allegedly prevented, with "violent acts and through the use of force," the entry of BFH's personnel and non-union employees. Id., ¶ 16. Further, BFH alleges that the striking Employees closed the water supply to its offices and warehouse, attacked the non-striking employee' vehicles with "rod-filled clubs," and committed other acts of violence. Id., ¶¶ 21-23. The strike ended in January 11, 2011.

BFH alleges that, as a result of the strike, it suffered significant damages to its business. Seeking to recover such damages, on June 6, 2011, BFH filed the complaint giving rise to the

**CIVIL NO. 11-1567 (SEC)**                                                                 Page 3

instant action. Then, on November 18, 2011, IBT moved to dismiss (Docket # 13), arguing, in pertinent part, that BFH's complaint failed to implicate it in the strike, and thus that it failed to state a plausible claim against it. Specifically, IBT contends that the complaint contains no allegations that Local 901 acted as its agent, or that IBT independently participated in the strike. BFH opposes dismissal and also requests, in the alternative, leave to amend its complaint. Docket # 24.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559. Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations

in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id.

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

**Applicable Law and Analysis**

It is a matter of bedrock principle that "[a]n international or regional affiliate of a local union may not be liable for the local's unfair labor practices merely by virtue of its affiliation with the local." Borowiec v. Local No. 1570, 889 F.2d 23, 26 (1st Cir. 1989) (citations omitted). Accordingly, to attribute liability on an international for a local's unlawful actions, a plaintiff must "[s]how that the local acted as the international's agent or that the international

independently participated in the unlawful conduct. Id. (citing Abreen Corp. v. Laborers' Internat'l Union, 709 F.2d 748, 757 (1st Cir. 1983), cert. denied, 464 U.S. 1040, 104 S. Ct. 702, 79 L. Ed. 2d 167 (1984)); Carbon Fuel Co. v. United Mine Workers of America, 444 U.S. 212, 213-17, 100 S. Ct. 410 , 62 L. Ed. 2d 394 (1979). Writing for an unanimous Court in Carbon Fuel Co., Justice Brennan explained that, by instituting the common-law agency test, Congress sought to shield the international:

> In the face of Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its local unions, it would be anomalous to hold that an international is nonetheless liable for its failure to take certain steps in response to actions of the local. Such a rule would pierce the shield that Congress took such care to construct. . . .

444 U.S. at 217-18, 100 S. Ct.

At the outset, plaintiff's complaint offends Carbon Fuel Co. See id. 216, 100 S. Ct. ("Congress . . . stopped short of imposing liability upon a union for strikes not authorized, participated in, or ratified by it."). Adopting a confusing pleading strategy, plaintiff lumps IBT and Local 900 together, treating them as one and the same. Indeed, the complaint includes numerous averments against "the Union," without any factual differentiation between IBT and Local 901. And, as correctly observed by IBT, the complaint contains no facts pointing to the participation of an IBT official in the strike. Nor does it contain allegations regarding IBT's independent participation in it. BFH concedes, furthermore, that Local 901—and not IBT—is the party to the collective bargaining agreement that resulted in the underlying labor dispute. See Docket # 24 ("It is clear that [IBT] is not [a] signatory party to the collective bargaining agreement with BFH . . . ."). In short, it is far from certain whether IBT had an actual role in the strike or if it even authorized it.

It follows that BFH's complaint fails to "[a]llege facts linking *each* defendant to the grounds on which that *particular* defendant is potentially liable." Redondo Waste Sys. v.

López-Freytes, 659 F.3d 136, 140 (1st Cir. 2011) (emphasis added; citation omitted). The Court, based on the facts alleged in the complaint, is consequently unable to impute any liability to IBT. Although the foregoing deficiencies mandate dismissal, as noted above, BFH seeks leave to amend its pleadings as an alternative to dismissal based on what it incorrectly calls "technicalities." Docket # 24, p. 24 (citation omitted). IBT does not oppose this request.

Plaintiff's course of action—requesting leave to amend the complaint in order to cure any factual deficiencies and conform it to the more demanding pleading standards set forth in Iqbal—has been previously favored by this court as an alternative to an early dismissal. See e.g., Roman-Samot v. Pontifical Catholic University of Puerto Rico, No. 10-1879, 2011 WL 5025978, at * 5 (D.P.R. Oct. 21, 2011); Perea v. Pereira, No. 09-1156, 2010 WL 891630 (D.P.R. Jan. 29, 2010). Generally, "Rule 15(a) governs a motion to amend a complaint." Fisher v. Kadant, Inc., 589 F.3d 505, 509-511 (1st Cir. 2009). This rule provides that "[c]ourt[s] should freely give leave [to amend] when justice so requires." Therefore, when a motion to amend is entered before formal entry of judgment, the district court should evaluate the motion under the liberal standard of Rule 15(a). Torres-Alamo v. Puerto Rico, 502 F.3d 20, 25-26 (1st Cir. 2007) (citing Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)). Under this standard, "[a]mendments may be permitted pre-judgment, even after a dismissal for failure to state a claim, and leave to amend is 'freely given when justice so requires.'" Id. (quoting Rule 15(a)).

The limited reasons for denying a pre-judgment motion to amend include "undue delay, bad faith, futility and the absence of due diligence on the movant's part." Id. (citing Palmer, 465 F.3d at 30). BFH's request to amend harbors none of these defects. The case management order set December 20, 2011 as the deadline for filing amended pleadings; plaintiff's request to amend was filed on that same day, as part of its opposition to IBT's motion to dismiss. Thus, there is no undue diligence, bad faith or prejudice upon IBT. Considering the liberal standard set forth

**CIVIL NO. 11-1567 (SEC)**                                                                                      **Page 7**

under Rule 15, BFH's diligence in requesting leave to amend, and the fact that the case is in its initial stages, its request to amend the complaint is **GRANTED**.

BFH, however, is *only authorized* to amend its complaint to include *specific facts linking IBT to the grounds on which it is potentially liable*. In order to avoid dismissal, therefore, BFH shall refrain from the "technicality" of collectively referring to IBT and Local 900 as "the Union."

**Conclusion**

Based on the foregoing, plaintiff's leave to amend is **GRANTED**; the amended complaint is due by **April 30, 2012.** IBT's motion to dismiss is **DENIED** at this time, but it may file a renewed motion to dismiss no later than **May 21, 2012**. The rest of the Case Management Order's deadlines remain in effect.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of April, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge